## Sheik *versus* McElroy.

1. A sheriff's deed for land sold for taxes, executed in 1806, and possession taken under it in 1809, and continued for the period of five years, is a bar to an ejectment brought after that time by the original owner; and the title of such former owner, thus extinguished, cannot be used by a stranger in possession as an outstanding title against the vendee under the tax sale.

2. An original owner who, *at the time of the passing of the Act of 29th March*, 1824, had a right of action against the purchaser of a tax title, because no possession had been taken under the same, might bring ejectment within two years after the date of that Act.

3. Since the Act of 29th March, 1824, the limitation of five years commences to run from the delivery of the deed to the purchaser under the sale for taxes.

4. In the case of interfering surveys, each party, being in actual possession under his own title, but neither enclosing, or cultivating, or otherwise actually occupying the part included in the interference, the law adjudges the possession of it to be in the rightful owner.

5. Where a party relies upon possession by actual enclosure for twenty-one years, it is his duty to show by a draft, supported by evidence, or by other means perfectly satisfactory, the extent, location, and duration of such enclosure. He must furnish the means of setting it off with certainty.

6. It is not his *present* enclosures, but those which *existed twenty-one years before the action was brought*, which are material to his defence.

ERROR to the Common Pleas of *Beaver county*.

This was an ejectment by James E. McIlroy and wife, David Patton and wife, Jane Jordan, and others, *v.* John and Thomas Shcik. The action was to March Term, 1850, and was for a tract of land containing fifty acres or thereabouts, bounded by lands of the plaintiffs on the north and west, of Robert Stoddart on the south, and of John Sheik on the east, being part of a survey called "Shrewsbury."

The plaintiffs below claimed as devisees under the will of William Jordan, deceased, and on the trial of the cause endeavored to deduce title from the Commonwealth to the testator. For this purpose, they offered and gave in evidence—

A patent to Dr. John Morgan, dated June 7, 1785, for a tract of land called "Shrewsbury," containing 300 acres and allowance.

An official copy of a survey of the "Shrewsbury" tract, dated March 17, 1785, on a warrant dated December 27, 1784.

Deed from Dr. John Morgan, to Elizabeth Newman, dated June 21, 1785, for the whole tract.

Power of attorney from William Newman and Elizabeth Newman, his wife, to Henry Newman, dated October 15, 1810, authorizing him to sell, &c., with the power of substitution; also, a substitution appointing Presley Neville, of Pittsburgh, in the place of Henry Newman. The power of attorney and substitution were admitted under objection and exception taken by defendant's counsel; but as the deed made in pursuance thereof was rejected by the Court at a subsequent stage of the trial, the admission became immaterial.

A deed from Presley Neville, attorney in fact, to James Jordan, dated June 9, 1813, was offered by plaintiffs, objected to by defendants, and rejected by the Court.

The plaintiffs being therefore unable to proceed with the chain of title thus commenced, after calling some witnesses to prove when William Jordan came upon what was called the "Shrewsbury" tract to reside, then offered in evidence a deed from William Henry, sheriff of Beaver county, to James Jordan, dated February 3, 1806, for 200 acres of land on Flougherty's Run, purporting in the deed to have been assessed and sold as the property of John M. Stillman, *for the county taxes of* 1800–1 and 2, and for the *road tax of* 1803.

To support this offer of the sheriff's deed, the plaintiffs offered and gave in evidence the duplicate of Moon township, No. 1, for

the year 1803, showing an assessment for county rates and levies on the list of unseated lands, in the following words and figures, to wit:

| John M. Stillman and adjoining James Jordan. | No. of acres | Valuation | Dollars | Cents |
|---|---|---|---|---|
| | 200 | | 300 | 90 |

Without showing more, the deed was admitted by the Court, and read in evidence. And in support of the deed the only additional evidence offered was a surplus bond, dated May 5, 1806, for $25.60, filed June 8, 1806, and signed by James Jordan. No evidence being offered *to show any authority for the sheriff to sell*, nor any compliance with the law in regard to selling unseated lands for road taxes.

The plaintiffs, having given in evidence the duplicates of Moon and Hopewell townships for a series of years, to show the number of acres variously assessed in the names of James and William Jordan, and the assignment of the sheriff's deed, by James to William Jordan, dated Sept. 20, 1808, then called a number of witnesses to fix the lines of the "Shrewsbury" survey; gave in evidence the will of William Jordan, deceased, and proved themselves to be the devisees therein mentioned.

*The defendants* offered and gave the following evidence:

Application of William Wusthoff, dated July 1, 1785, for 400 acres of land—improvements made in 1770. Warrant to William Wusthoff, dated October 17, 1785, for 400 acres of land. Official copy of survey made on same, dated October 17, 1785, called "Strabane." Patent to James O'Hara, dated March 3, 1789, for the same. Will of James O'Hara, dated September 15, 1819. Deed from the executors of the will of James O'Hara, to David Harper and Hamilton Giles, dated June 10, 1823, for 193 acres and 134 perches of said tract. Deed from David Harper and wife to Hamilton Giles, dated August 16, 1823, for their interest in 118 acres and 93 perches of the same. Deed from Giles and wife, to John Dolen, dated December 1, 1828, for 118 acres and 93 perches, as described in the deed of Harper and wife to Giles. Deed from John Dolen and wife, to Samuel Hood, dated April 12, 1833, for part of the tract, to wit, 95 acres and 137 perches. Deed from Samuel Hood and wife, to John Sheik (one of the defendants), dated April 1, 1835, for the same, *which embraced the land in dispute.*

A number of witnesses were then called to prove that the lines of the "Strabane" or O'Hara survey were well marked on the ground, and corresponded in age with the date of the official survey. Also to prove that John Dolen had gone into possession of the land long previous to the date of his deed from Giles and wife

[Sheik *v.* McElroy.]

to him, which bears date December 1, 1828, and describes his possession by fixed courses and distances, and defined boundaries; and that he occupied and claimed from and after the 1st December, 1828, according to the lines described in his deed.

GILMORE, J., charged the jury, *inter alia,* as follows:—

"The plaintiffs have shown a good title and a right to recover, unless the locality in dispute is not comprehended in their tax deed, or it is otherwise defective; or they are barred by the statute of limitations. The tax deed to James Jordan is dated 3d February, 1806. The assignment from him to William Jordan is dated 25th September, 1808.

"This deed is for 200 acres of land in Hopewell township, assessed as the property of John M. Stillman, and for taxes of the year 1800, 1, 2, and 3.

"The only assessment proved was for the road-tax of 1803. The sale was for $38, and there is a surplus bond for $25.69, dated May 5, 1806, and marked, filed 8th June, 1806. As to the identity of the land assessed, with that patented to John Morgan as 300 acres, and called 'Shrewsbury,' you have first the evidence of Mr. Potter, one of the Commissioners of the county, that he could find no assessments for Hopewell township earlier than the year 1803; also of Mr. McCallister, who says that Hopewell township was formed during the last war. Daniel Leich says the 'Shrewsbury' tract went by the name of the Stillman tract. This, then, in connection with the fact that no tract in either Moon or Hopewell was assessed as the Shrewsbury tract, would be, perhaps, satisfactory to the jury, that the tract assessed in the name of John M. Stillman was the Shrewsbury tract. The fact that the assessment is made for but 200 instead of 300 acres, may be accounted for by the evidence of such witnesses as Robert Hood and others, that the father of Robert Hood purchased, at an early period, 100 acres off the Shrewsbury tract. It is true, some of the witnesses are unable to say when the purchase was made precisely. Leich recollects that Hood was there as early as 1810. The lines are found separating the 100 acres from the other portion of the tract, and it appears to have been assessed to Hood as early as 1802. It is further in evidence, that the duplicates containing the assessments cannt be found in the office prior to 1802.

"It does not appear by what authority the 100 acres was stricken off to Hood; but we are of opinion that a transaction so ancient as this was, and not questioned for fifty years, is sufficient from which to presume authority. This, then, would validate the assessment. It is not questioned but that the title is, and was out of the Commonwealth. And as to the 200 acres assessed, they must be considered as unseated, unless some other person than Hood was in possession of the tract; and if there was, we have failed to perceive the evidence.

[Sheik *v.* McElroy.]

" Many things required by the Act of 1804, under which the sale was made, have not been complied with, and one in particular has been complained of by the defendants—that there is no evidence that the sheriff had any warrant to sell. But we are of opinion that if the jury believe that the land was unseated, the title out of the Commonwealth and that an assessment was made, all other irregularities or omissions are cured and barred after the expiration of five years from the sale, if the purchaser, or his assignee, or those claiming under them, were in possession for that length of time. The evidence is that *William Jordan,* according to the recollection of Leich, *took possession as early as* 1810; in this he is corroborated by the assessments. James Jordan is assessed as early as 1806, 7, and 9. It also appears that this possession has been continued ever since. Dolen did not come on earlier than 1829, according to the evidence.

" The next, and perhaps the most important inquiry for the jury, will be, whether this land is covered by the Shrewsbury survey."

The Court explained the general principles which govern with respect to surveys, and referred to portions of the evidence as to the surveys.

" But the defendants say if the jury should find against them on every other point, still they have a good title by virtue of the statute of limitations of 1785. How is this? Jordan went into possession in 1809, and has been in possession ever since. It is probable from the evidence that Dolen took possession in the year 1829. He is first assessed in 1830; this suit was brought in the beginning of 1850; Dolen's article is dated 1st December, 1828; so that [if he was in possession 21 years before the bringing of this suit, it is as much as can be said. But if the plaintiffs were in possession before this, claiming the whole, and their title was perfect before Dolen entered, the defendants would be confined in their defence to the part enclosed or cultivated for 21 years before the bringing of this suit. *As to the part, if any, cleared or en-closed more than 21 years before the commencement of this suit,* we have no evidence of either its position or quantity; no surveyor has marked it, no witness has designated it with certainty, no evidence was offered to you from which you could form or dictate any description. If therefore you find for the plaintiffs it must be *general ;* and if they choose to take possession of any improvement made more than 21 years before this suit was brought, the defendants may regain possession by bringing ejectment against them."]

November 25, 1851, verdict was rendered " for the plaintiffs."

It was assigned for error, 1. That the Court below erred in charging the jury that " the plaintiffs have shown a good title, and a right to recover, unless the locality in dispute is not comprehended in their tax deed," and " that if the jury believe that the

[Sheik *v.* McElroy.]

land was unseated, the title out of the Commonwealth, and an assessment was made, that all other irregularities or omissions are cured and barred after the expiration of *five years from the sale*, if the purchaser or his assignee, or those claiming under them, *were in possession for that length of time.*"

2. Error was also assigned to the portions of the charge last before recited, and enclosed in brackets.

*Cunningham*, for plaintiff in error.—It was contended that there was no such assessment as authorized the sale in question. That there was no evidence of a warrant by the county commissioners to the sheriff to sell, and that such omission was not a mere irregularity, which would be cured by the lapse of time.

Sheik came into possession under at least *color of title* from the Commonwealth, and was not to be regarded as an intruder. To give effect to the statute of limitations, the possession of an occupant by a colorable title is coextensive with his title; but the possession of an avowed intruder is confined to the land actually occupied by him: 3 *Watts* 70. An entry is *by color of title* when made under a *bonâ fide* and not a pretended claim: *Id.* 72.

*Fetterman*, with whom was *Roberts*, for defendants.—It was said that the controversy in this case was not between the holders of the tax title and the owners of the legal title under the patent to Morgan; but between the holders of the tax title and those claiming under one who entered as *an intruder*, and afterwards became a purchaser of the O'Hara title. It was submitted whether, as the owners of the title under Morgan had not complained of any defect in the tax sale, strangers to that title have the right to object to the sale as defective: 5 *W. & Ser.* 197.

William Jordan was in the undisturbed possession of the land from 1809 till the purchase by Dolen from Giles in 1828. During that time Jordan had his family on it, and had made valuable improvements, and paid the taxes, and no one claimed under the Morgan patent adversely to him. It was contended that the title of the owners of the land was barred by non-claim for five years after a sale for taxes; and that since the Act of 1824 the limitation commenced from *the day of sale:* 9 *Barr* 71, Robb *v.* Bowen.

In the sheriff's deed was recited a sale for the county and road taxes of 1800–1–2, and the road tax for 1803; and it was contended that if a tract of land be sold for the payment of the taxes of several years, and there be a sufficient assessment for any one of the years, the sale is good: 7 *W. & Ser.* 259, Bratton *v.* Mitchell. In Dikeman *v.* Parish, 6 *Barr* 211, it was held that the sheriff's deed was admissible without the warrant from the commissioners.

As to the 2d assignment. On the 1st December, 1828, Dolen

purchased from Giles. Before that, he had erected his cabin and cleared the three acres for which he paid taxes on part of the Hood 100 acres in the Shrewsbury survey, and which was not within the survey of the O'Hara tract. At the time of such purchase Jordan was residing with his family on the 200 acres, and it was improved and cultivated by him till his death, and afterwards by those claiming under him. He and they had actual possession of all the land they had cleared and enclosed, and constructive possession of all the residue within the lines of the tract; and if Dolen cleared and cultivated land within the interference of the surveys, the statute of limitations would apply only to that part he actually occupied by clearing and cultivation. "When there are interfering surveys, the statute of limitations protects only to the extent actually improved:" 4 *Barr* 111, Hatch v. Smith; 5 *Barr* 490, Seigle v. Louderbach.

Where the defendant sets up the statute of limitations as a defence for part of the land in dispute, he must designate it by a draft or marks upon the ground, so as to enable the jury to describe it in their verdict: 2 *Watts* 28.

The opinion of the Court was delivered, October 11, by

Lewis, J.—The plaintiff below claimed under James Jordan, and recovered upon a tax sale of what was called "Shrewsbury Survey."

The sheriff's deed under the sale for taxes was executed to James Jordan, on the 3d February, 1806, and in 1809 possession was taken under that title, which has been continued ever since, without any action or claim on the part of the original owner.

By the Act of 3d April, 1804, it was declared that no action for the recovery of lands sold under that Act, should lie, "unless the same be brought within five years after the *sale*." By reason of the supposed difficulty in bringing an action of ejectment against a purchaser who had not taken actual possession, it was held, in opposition to the previous decision in Parish v. Stevens, 3 *Ser. & R.* 298, that the limitation did not commence until *possession* was taken under the sale, and that the original owner might bring his action within five years after possession was taken: Waln v. Shearman, 8 *Ser. & R.* 357; Cranmer v. Hall, 4 *W. & Ser.* 36. In consequence of the decision in Waln v. Shearman, the Act of 29th March, 1824, made provision for bringing an ejectment against a purchaser who had not taken possession, and gave to any person "then having a right of entry because no actual possession had been taken of the land so sold," a right of action within two years from the date of the Act. In this case no action was brought within the two years prescribed, or at any time. Since the Act of 1824, the limitation commences to run *from the delivery of the deed to the purchaser*: Robb v. Bowen, 9 *Barr* 71.

[Sheik *v.* McElroy.]

It is not necessary in this case to decide that the action of the original owner would have been barred even in the absence of possession under the sale; but, under the uncontradicted evidence of actual possession, taken in 1809, and continued till this time without interruption, his action is clearly barred, and the title under the sale for taxes is perfect.

The statement that "if Dolen was in possession twenty-one years before the bringing of this suit, it is as much as can be said," was an intimation of the opinion of the Court on a question of fact, which did not take its ultimate decision from the jury. It is therefore not ground for reversal. But the error did the defendants below no harm, for it conceded to them a possession of sufficient duration for their purposes. A longer possession than twenty-one years, under the circumstances of this case, would not have secured to the plaintiffs in error any material advantages on the trial; for there is no evidence whatever to show that their possession was taken before that of the defendants in error, which, as already stated, commenced in 1809. This is a case of interfering surveys or titles with each party in actual possession under his own title, but neither party enclosing, or cultivating, or otherwise actually occupying the part included in the interference. Under such circumstances, the law adjudges the possession of it to be in the rightful owner.

It is complained that the Court stated in its charge that, "as to the part, if any, cleared or enclosed more than twenty-one years before the commencement of the suit, we have no evidence of either its position or quantity. No surveyor has marked it; no witness has designated it with certainty; you have no evidence; none was offered you from which you could form or dictate any description. If, therefore, you find for the plaintiffs, it must be generally; and if they choose to take possession of any improvements made more than twenty-one years before the suit was brought, the defendant may regain possession by bringing ejectment against them." We perceive nothing in the evidence to justify any complaint against this instruction. If the plaintiffs in error relied upon their deed from Dolen as fixing the boundaries of their possession, this will not enable them to hold by constructive possession any part of the older and better title in the actual possession of the owner.

To disseise the rightful owner in actual possession, an actual occupancy within his lines by the disseissor is indispensable. In such a case the statute of limitations will have no effect, except as to the part which is actually enclosed: Cluggage *v.* Duncan, 1 *Ser. & R.* 111. If the plaintiffs in error relied upon such actual enclosure, it was their duty to show, by a draft, supported by the evidence, or by other means perfectly satisfactory, the extent, location, and duration of such enclosure. It is peculiarly incum-

[Sheik *v.* McElroy.]

bent upon a party, claiming, to hold land by virtue of such an occupancy, to furnish the means of setting it off to him with certainty.    In such a matter there should be no guess-work.    Where the claimant of such a possession occupies the attention of a jury with the extent of his *present* enclosures, instead of distinctly defining their extent and location *as existing* 21 *years before the suit was brought*, he is pursuing the shadow and forgetting the substance.    The directions of the Court on this part of the case meet our cordial approbation.

The errors assigned are not sustained, and the judgment is to be affirmed.

Judgment affirmed.

Note.—In a late case from Jefferson county, viz., that of Burd's Executors *v.* Patterson, in which the opinion of the Court was delivered in December, 1853, by Lewis, J., it has been again decided that under the Act of 29th March, 1824, the limitation of five years begins to run against the former owner, not from the time when possession was taken in pursuance of the sale for taxes, but from the delivery of the treasurer's deed to the purchaser.